UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LAURA J. ASBURY, | ) | CASE NO. 5:08CV2043 |
| Plaintiff, | ) ) | JUDGE JOHN R. ADAMS |
| vs. | ) ) | |
| LINDA TUCCI TEODOSIO, et al., | ) ) | **MEMORANDUM OF OPINION AND ORDER** |
| Defendants. | ) ) ) | [Resolving Doc. 14] |

This matter comes before the Court on Plaintiff Laura J. Asbury's Motion to Dismiss (Doc. 14) Defendant Linda Tucci Teodosio's counterclaims. Teodosio has filed her Opposition to the Motion (Doc. 15), and Asbury has filed a Reply to the Opposition (Doc. 16). The Court has been advised, having considered the complaint, counterclaims, pleadings, and applicable law. For the reasons that follow, Asbury's Motion is GRANTED.

**I.   STATEMENT OF FACTS**[1]

Asbury began working for the Summit County Juvenile Court on January 6, 2000. On May 19, 2003, Asbury was promoted by Defendant/Judge Teodosio and given the title of Detention Officer. On March 2, 2007, Asbury was given a "last chance" warning for communication and/or associating with a released female juvenile. During this same time period, Asbury complained that Juvenile Court employees were gambling while on duty. Further, Asbury reported that Detention Center Supervisor Donald Guthrie was under the influence of alcohol during work hours. A short time later, still in March of 2007, Asbury reported that Detention Officer Lola Simmons had failed to properly admit new juveniles, to

---

[1] For the purposes of this motion, the facts as alleged in Asbury's complaint have been taken as true.

document medical watch information, and to enforce the delinquent level system with the juveniles.

On March 14, 2007, Asbury was informed that a juvenile had lodged a complaint against her the prior day, alleging that Asbury had improperly revealed that the juvenile had a sexually transmitted disease.  Asbury denied the conduct at issue, but was placed on restricted duty pending an investigation.  On April 21 and 22, 2007, Asbury was propositioned for sex by Detention Officer Michael Sales.  On the morning of April 23, 2007, Asbury reported Sales' conduct to her supervisor.  On the afternoon of April 23, 2007, Asbury's employment was terminated.

Based upon the above, Asbury filed her complaint in this Court on August 22, 2008 and amended her complaint on September 30, 2008.  In her amended complaint, Asbury alleges that the above events violated her rights under 42 U.S.C. § 1983 by depriving her of freedom of speech, freedom of association, and equal protection.  Asbury also contends that her termination was the result of unlawful retaliation and gender discrimination.  Finally, Asbury contends that she was subject to a hostile work environment and sexual harassment.

Defendant Teodosio answered the amended complaint and raised counterclaims of defamation and false light invasion of privacy.  Teodosio's counterclaims rely upon material published on a website run by Asbury, http://www.impeachjudgeteodosio.com.  In her counterclaims, Teodosio alleges that this website and another under Asbury's control contain defamatory statements "that the Judge improperly utilized a County-provided cell phone for personal purposes, thereby misappropriating public funds." Doc. 6 at 13.  Teodosio also alleges that the site "accused [her] of racial injustices; ethical violations; and obtaining 'bogus' endorsements." *Id*.  Asbury has moved to dismiss these counterclaims, contending that they are

2

not compulsory and that no independent basis for federal jurisdiction exists to support their prosecution.

## II.     LEGAL STANDARD

Fed.R. Civ.P. 13(a)(1) provides as follows:

A pleading must state as a counterclaim any claim that--at the time of its service-- the pleader has against an opposing party if the claim:

(A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and

(B) does not require adding another party over whom the court cannot acquire jurisdiction.

The Sixth Circuit has previously explained the application of this rule.

The courts, rejecting a literal application of the rule, have devised other tests which further focus the question:

1) Is there a logical relationship between the two claims?

2) Are the issues of fact and law raised by the claim and counterclaim largely the same?

3) Would res judicata bar a subsequent suit on the counterclaim if the court were not to take jurisdiction?

4) Would substantially the same evidence support or refute both the claim and the counterclaim?

*Maddox v. Kentucky Fin. Co., Inc.*, 736 F.2d 380, 382 (6th Cir. 1984).  A party's failure to assert a compulsory counterclaim forever bars that party from raising the claim in another action.  *See Baker v. Golden Seal Liquors, Inc.*, 417 U.S. 467, 469 n.1 (1974).

This circuit applies the "logical relationship" test for determining whether a claim arises out of the same transaction or occurrence.  Under this test, we determine whether the issues of law and fact raised by the claims are largely the same and whether substantially the same evidence would support or refute both claims.

*Sanders v. First Nat'l Bank & Trust Co. in Great Bend*, 936 F.2d 273, 277 (6th Cir. 1991) (internal citation omitted).

**III.    ANALYSIS**

In her response to the motion to dismiss, Teodosio contends that each of Asbury's claims relate to "decisions the judge made and actions the judge took in her capacity as Juvenile Court judge, specifically her administrative capacity." Doc. 15 at 3. Teodosio then asserts that her counterclaims allege that "Asbury made false statements about the judge's administrative actions and decisions, including, but not limited to, statements that she committed theft in office, misappropriated public funds, and committed ethical violations." *Id.* Based on these facts, Teodosio concludes that her counterclaims are logically related to the amended complaint. This Court finds that Teodosio's argument is much too broad.

In short, Teodosio claims that because Asbury's amended complaint challenges one of her administrative decisions, comments about *any other* administrative decision are logically related to that complaint. The Court has found no support for such a broad reading of the logically related concept.

By its nature, the law related to the counterclaim will be dramatically different than the law related to the amended complaint. Asbury has raised federal civil rights and discrimination causes of action, while Teodosio raises state law claims of defamation and false light. As such, this factor does not support a finding that the counterclaims are compulsory.

Furthermore, based upon the facts pled by Teodosio, the facts supporting her counterclaims will differ substantially from the facts supporting the complaint. Teodosio's counterclaims detail alleged false statements regarding cell phone usage, misappropriation of public funds, racial injustices, ethical violations, and bogus endorsements. None of these

4

allegedly false statements can be said to be related even tangentially to the amended complaint filed by Asbury.  Instead, Asbury's amended complaint claims retaliation based on wholly unrelated conduct, as detailed above.

The Court also notes that Asbury's amended complaint relates entirely to her discipline and termination from the juvenile court.  That termination occurred in April of 2007.  The defamatory statements relied upon by Teodosio were not published until September of 2007.  As such, the facts supporting Teodosio's Counterclaims are temporally remote from the facts alleged in the amended complaint.  Furthermore, there is no indication in the counterclaims that any of the *events* discussed in the defamatory statements were temporally related to Asbury's termination or discipline.

Teodosio's claim that the evidence in both matters will substantially overlap appears to be based upon her belief that other allegedly defamatory statements on Asbury's website are more closely related to the complaint.  "Many of the allegations in the Amended Complaint and the statements on the website relate to the same subjects." Doc. 15 at 4.  Teodosio, however, has never pled facts related to any of these statements that in fact are related to the amended complaint.  Rather, her counterclaims identify the specific topics detailed above, nothing more.  The Court is not inclined to expand the factual basis of the counterclaims simply to find that jurisdiction over the matter exists.

While defamation and false light are subject only to notice pleading, the counterclaims place Asbury on notice of specific categories of defamatory speech.  As such, the Court will not expand those categories to include any and/or every statement on the website that Teodosio later determines should be a part of her counterclaims.  To do so would place an unfair burden on Asbury, effectively asking her to defend against claims that have never been pled.

5

Assuming arguendo that Teodosio's counterclaims include broader topics, including many of the postings on the website, the Court would then find that at least a portion of the counterclaims are logically related to the complaint. However, the Court must also consider whether the interests of judicial economy and efficiency would be served by requiring that the two claims be heard together. *Maddox*, 736 F.2d at 383. This Court finds that judicial economy would not be served by joining these matters.

First, if Teodosio is held to the facts as alleged in her counterclaims, she would introduce entirely new, unrelated topics to this litigation. The counterclaims would dramatically expand the scope of discovery and increase the expense related to this litigation. Second, if the Court were to construe the counterclaims as broadly as Teodosio has in her opposition to the motion to dismiss, discovery would be expanded even further. For example, in Asbury's reply to the opposition to her motion, she identifies 23 topics discussed on the website. Under Teodosio's broad interpretation of the contents of her counterclaims, any one or all of these topics could form the basis of her claims. Many of those subjects include individuals never mentioned in the amended complaint and their inclusion in this suit would significantly increase the number of individuals deposed during discovery. Consequently, allowing these counterclaims to go forward would serve only to confuse the issues at hand and unduly burden the litigants.

Finally, the Court does not believe that either res judicata or collateral estoppel would later bar these counterclaims. If Asbury is successful on each of her claims, it will shed no light whatsoever on the truth or falsity of the statements on her website. Likewise, if it is shown that Asbury's termination was entirely proper, the veracity of the website statements will not be placed in issue or resolved in any manner. The Court would likely have a different view if any alleged defamatory statement had been identified by Teodosio that related to Asbury's

6

termination.  In that case, collateral estoppel could well be an issue.  However, as detailed above, no such statement was identified in the counterclaims.

Based upon the above, the Court concludes that the counterclaims pled by Teodosio are not compulsory.  As the claims lack any independent basis to establish federal jurisdiction, Teodosio's counterclaims are hereby DISMISSED WITHOUT PREJUDICE.

## IV. CONCLUSION

Asbury's motion to dismiss the counterclaims is GRANTED.  Teodosio's counterclaims are DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED.


Date:   January 6, 2009                         */s/ John R. Adams*
                                                Judge John R. Adams
                                                UNITED STATES DISTRICT COURT