UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LAURA J. ASBURY | ) | Case No. 5:08CV2043 |
| | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| vs. | ) | |
| | ) | [Resolving Doc. #50] |
| LINDA TUCCI TEODOSIO, et al., | ) | |
| | ) | |
| | ) | MEMORANDUM OF OPINION |
| Defendants. | ) | |

This matter is before the Court upon a motion for summary judgment filed by Defendants Bruce Alexander, Steven Stahl, Summit County Court of Common Pleas, Juvenile Division, and Judge Linda Teodosio.  For the reasons stated herein, Defendants' motion is GRANTED.

**I.      Facts**

Plaintiff Laura Asbury was hired by the Summit County Court of Common Pleas, Juvenile Division, in January of 2000 as a part-time group counselor.  On May 19, 2003, under the supervision of Judge Teodosio, Asbury was promoted to full-time status and she became a detention officer.  As a detention officer, Asbury supervised juveniles in the detention center and transported them to court appearances, medical appointments, and counseling sessions.

Asbury's employment was ultimately terminated in April of 2007.  Prior to her termination, Asbury was disciplined on numerous occasions.  In 2002, Asbury was given a verbal warning for punching the time cards of other employees.  Later that same year, she received a written warning for allowing a male juvenile into the female unit of the detention

1

center.  In 2003, Asbury received another written warning, this time for accepting charges on an international call and failing to monitor her hall for roughly 30 minutes.  In 2004, Asbury received a written warning for insubordination.  The written reprimand stemmed from allegations that Asbury said "This is bullshit." to one of her supervisors.  Asbury contends that she was sticking up for a fellow employee and that a written reprimand for her actions was unduly harsh.  Nonetheless, she does not challenge that some discipline for the event was appropriate.

Asbury's discipline history continued in August of 2004.  At that time, she was suspended for three days for falsifying a log to indicate that she had performed bed checks when she had not and for falling asleep during her shift.  In November of 2005, Asbury was disciplined for excessive patterned sick leave.  Asbury also viewed this discipline as unfair, asserting that she had medical excuses for all of her absences.  In December of 2005, Asbury received a verbal warning for failing to call to alert her supervisor that she would be late.  In January of 2006, Asbury received a written reprimand for allegedly making improper statements to a female detainee.  In May of 2006, the discipline continued with a verbal warning for allegedly making a threatening statement to a supervisor.  In November of 2006, Asbury was again suspended, this time for allegedly disclosing confidential information about a detainee.

In 2007, Asbury was disciplined for maintaining contact with a juvenile following the juvenile's release.  As a result, Asbury received a final warning letter on March 2, 2007.  The letter indicated that Asbury would be terminated if she continued "to engage in any behavior inappropriate to [her] conduct as a Detention Officer[.]"  Within two weeks of receiving this notice, Asbury became involved in a confrontation with her supervisor, Delmar Coleman.  In addition, a youth filed a grievance against Asbury, alleging that Asbury had revealed confidential

medical information about the youth to others in the detention center.  Asbury denied revealing the information, contending that the youth was making the story up because she did not like the manner in which Asbury supervised her.  Assistant Court Administrator Steve Stahl investigated the matter and concluded that there was sufficient evidence to support the grievance.  The results of the investigation were sent to Judge Teodosio, and the Judge decided to terminate Asbury.  On April 23, 2007, Alexander informed Asbury of her termination.

On August 22, 2008, Asbury filed the instant suit, asserting thirteen causes of action. Asbury contends that the juvenile court was infected with cronyism and that Judge Teodosio had "favorites" that could effectively ignore the rules that others were required to follow.  For a bulk of the discipline Asbury received, however, she does not challenge that her conduct occurred. Instead, she focuses on the fact that based on her own personal perception, others received more favorable treatment.

On August 20, 2009, the remaining defendants moved for summary judgment on each of Asbury's claims.  Asbury responded in opposition on September 28, 2009, and Defendants replied on October 12, 2009.  The Court now resolves the pending motion.

## II.    Legal Standard

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed.R. Civ.P. 56(c).  The initial burden of showing the absence of any "genuine issues" belongs to the moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing Fed.R. Civ.P. 56(c)).

> [A] party seeking summary judgment always bears the initial responsibility of
> informing the district court of the basis for its motion, and identifying those
> portions of "the pleadings, depositions, answers to interrogatories, and admissions

> on file, together with affidavits, if any," which it believes demonstrate the absence
> of a genuine issue of material fact.

*Id*.  (quoting former Fed.R. Civ.P. 56(c)).  A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary burdens.  *Id*. at 252.  Moreover, the Court must view a summary judgment motion "in the light most favorable to the party opposing the motion."  *U.S. v. Diebold, Inc*., 369 U.S. 654, 655 (1962).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party.  The non-moving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be resolved by a jury."  *Cox v. Kentucky Dep't of Transp*., 53 F.3d 146, 150 (6th Cir. 1995).  Moreover, Fed.R. Civ.P. 56(e)(2) states as follows:

> When a motion for summary judgment is properly made and supported, an
> opposing party may not merely on allegations or denials in its own pleading;
> rather, its response must – by affidavits or as otherwise provided in this rule – set
> out specific facts showing a genuine issue for trial.  If the opposing party does not
> so respond, summary judgment should, if appropriate, be entered against that
> party.

Accordingly, summary judgment analysis asks whether a trial is necessary and therefore is appropriate when there are no genuine issues of fact.  *Anderson,* 477 U.S. at 250.

## III.  Legal Analysis

### A.  Retaliation – First Amendment

In her complaint, Asbury contends that her rights under the First Amendment were violated by Defendants.  The Court finds no merit in this contention.

The Sixth Circuit has recently explained the framework for analyzing claims such as those raised by Asbury.

> A government employee does not relinquish all First Amendment rights otherwise enjoyed by citizens just by reason of his or her employment. Those rights, however, are subject to limits beyond what the Constitution allows for the general public. Consequently, to establish a prima facie case of retaliation under 42 U.S.C. § 1983, a plaintiff must show that (1) the plaintiff engaged in constitutionally protected speech; (2) the public employer subjected the plaintiff to adverse action; and (3) the adverse action was motivated by the protected speech.
>
> …
>
> To show that a public employee's speech is protected, a plaintiff must make two threshold showings. First, the plaintiff must show that the speech involves a matter of public concern. Second, the plaintiff must show that the speech was made outside the duties of employment. If both of these threshold showings are made, then we must balance the individual's interest against the government's interest under *Pickering*.
>
> Our analysis of whether a public employee's speech is protected begins with the "threshold" question whether the speech involves a matter of public concern. This is a question of law determined by this court *de novo*. We must consider the content, form, and context of a given statement in determining whether it involves a matter of public concern. Matters of public concern include any matter of political, social, or other concern to the community.

*Miller v. City of Canton*, 319 Fed. Appx. 411, 416 (6th Cir. 2009) (citations and quotations omitted).

The Court's initial determination must also include a finding regarding whether the speech at issue was made during the course of the employee's official duties.

> Additionally, we must determine at the threshold whether the public employee's speech was made pursuant to his or her official responsibilities or outside the duties of employment. If the speech was made pursuant to the employee's official duties, then the plaintiff's First Amendment claim must fail.

*Id.* at 416-417 (citations and quotations omitted.)

In support of her claims, Asbury claims that she was retaliated against for speaking with juveniles after their release, providing legal advice to a juvenile, speaking out about gambling occurring on the court premises, speaking out against a co-worker smelling of alcohol at work, and for pointing out that another co-worker was improperly handling intake procedures.  The Court finds that none of these matters qualify as a public concern under the specific facts presented herein.

1.  Speaking to juveniles after their release

Asbury attempts to couch this speech as a matter of public concern by contending that her speech was designed to encourage juveniles to become law-abiding citizens.  While it is commendable that Asbury would seek to assist juveniles following their release, her personal desire to aid these individuals is not a matter of public concern.  *See Akers v. McGinnis*, 352 F.3d 1030, 1038 (6th Cir. 2003) (finding that a former department of corrections employee's desire to stay in contact with a probationer was not a matter of public concern and noting that "[w]hile all of these impulses are entirely understandable, even laudable, they are purely private matters of little or no concern to the community as a whole.").

2.  Providing legal advice

There is no matter of public concern when it comes to Asbury providing legal advice to a juvenile.  In fact, as a non-lawyer, the public interest would be served by Asbury refraining from offering such advice.  Accordingly, her claim cannot rest on this speech.

3.  Commenting on a co-worker's failures, gambling at the Court, and a co-worker smelling of alcohol

Asbury's remaining arguments assert that the public concern prong is satisfied because the public has an interest in knowing that illegal gambling occurred at the Court and that a public

employee smelled of alcohol during work hours.  Asbury is correct that in certain cases concerns such as these have been found to satisfy the public concern prong.  *See, e.g., Morrison v. Johnson*, 2006 WL 2811802 (N.D.N.Y. Sept. 28, 2006) (finding that speech concerning office gambling constituted a public concern).  Asbury's speech, however, is distinguishable.

First, in examining the context of the speech, this "court must ask to what purpose the employee spoke."  *Dambrot v. Central Michigan Univ.*, 55 F.3d 1177, 1187 (6th Cir. 1995).  In the instant matter, it is clear that Asbury's speech was self-serving.  Asbury repeatedly cited the flaws of others because, by her own admission, she believed that she was being treated differently.  As a result, Asbury attempted to highlight the transgressions of her co-workers in an attempt to salvage her own job.  As such, the Court cannot conclude that the speech which centered on her own personal agenda satisfies the public concern prong.  Furthermore, to the extent that she complained about the failure to follow intake procedures, such speech clearly fell within her job duties as a detention officer.

Additionally, "courts generally have held that internal complaints to supervisors about workplace conditions or co-worker misconduct do not qualify as speech 'as a citizen' that is entitled to First Amendment protection."  *Harrison v. Oakland Cty.*, 612 F.Supp.2d 848, 867 (E.D.Mich. 2009) (citing *Davis v. McKinney*, 518 F.3d 304, 315 (5th Cir. 2008); *Boyce v. Andrew*, 510 F.3d 1333, 1343-44 (11th Cir. 2007); *Foraker v. Chaffinch*, 501 F.3d 231, 241-43 (3d Cir. 2007); *Freitag v. Ayers*, 468 F.3d 528, 546 (9th Cir. 2006)).  In the instant matter, Asbury's alleged protected speech consisted of just that, internal complaints about co-worker misconduct.  The fact that Asbury never made her concerns known to the public only serves to highlight that the purpose of her speech was personal and not a matter of public concern.

Moreover, even if Asbury's speech somehow constituted a matter of public concern, under the balancing test of *Pickering v. Board of Education*, 391 U.S. 563, (1968), Asbury's interests do not outweigh the department's in promoting "the effective and efficient fulfillment of its responsibilities to the public." *Connick*, 461 U.S. at 150; *see also Williams v. Kentucky*, 24 F.3d 1526, 1536 (6th Cir. 1994) (explaining that a court must "consider whether an employee's comments meaningfully interfere with the performance of [his] duties, undermine a legitimate goal or mission of the employer, create disharmony among co-workers, impair discipline by superiors, or destroy the relationship of loyalty and trust required of confidential employees."). As noted above, Asbury's speech was limited to internal complaints.  Her speech often went outside the appropriate chain of command and unquestionably altered the trust between Asbury and other co-workers.  Accordingly, the Court concludes under the *Pickering* balancing test that the speech is unprotected.

Finally, even if the Court were to find that the speech above was protected, Asbury would still be required to demonstrate the remaining elements of her retaliation claims.  A plaintiff alleging retaliatory discharge must prove the following: "(1) that she engaged in protected activity; (2) that she was the subject of adverse employment action; and (3) that a causal link existed between the protected activity and the adverse action."  *Chandler v. Empire Chem., Inc.,* 650 N.E.2d 950, 954 (Ohio Ct. App. 1994) (citing *Jackson v. RKO Bottlers of Toledo, Inc*., 743 F.2d 370, 375 (6th Cir. 1984)).  Federal law has adopted the *McDonnell Douglas* burden-shifting framework in retaliation cases, in which the plaintiff must first make out a prima facie case of discrimination.  *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001). The burden then shifts to the defendant to give a legitimate, non-discriminatory explanation for its actions regarding the

plaintiff. *Id*. If the defendant satisfies its burden, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the proffered explanation is pretextual. *Id*.

Assuming that prong one is satisfied, the Court would proceed to prong two.  There is no dispute that Asbury was subjected to an adverse employment action, her termination. Accordingly, the Court is left to examine the third prong, causation.

With respect to causation, Asbury "must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant[s'] alleged retaliatory conduct."  *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001).  In this regard, Asbury appears to conflate her argument regarding pretext with a causation argument.  Citing to what she believes to be inconsistencies regarding the stated reason for her termination does not aid Asbury in demonstrating causation.  Rather, this is an argument more properly raised to rebut the legitimate reason for termination given by Defendants.

Additionally, Asbury contends that the temporal proximity of speech and termination supports a finding that causation has been satisfied.  "[T]he Sixth Circuit has not established a black letter rule regarding the role of temporal proximity in establishing the causation prong of a prima facie retaliation case." *Sanford v. Main Street Baptist Church Manor, Inc.*, Nos. 07-5869, 07-5905, 2009 WL 1410994 at *12 (6th Cir. May 20, 2009). However, a temporal connection coupled with other indicia of retaliatory conduct may be sufficient to support a finding of a causal connection."  *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 737 (6th Cir. 2006).

In the instant matter, Asbury has provided no additional indicia of retaliation, instead relying upon solely temporal proximity.  All of Asbury's alleged indicia of retaliation relate to her claims that her discipline was imposed in a "shoddy" and "unprofessional" manner. As noted above, these arguments are more suited to rebut the legitimate reason given for her termination.

Finally, even if the Court were to find that Asbury had somehow met each of the above elements, her First Amendment retaliation claims would still fail.  There is no dispute that Defendants provided a legitimate reason for Asbury's termination.  Asbury was terminated for communicating with a juvenile after the juvenile's release, despite an email from Judge Teodosio prohibiting such contact.  Asbury admits that this conduct occurred.  Furthermore, Asbury admits to receiving an email from Judge Teodosio that prohibited this conduct.  The email read in pertinent part as follows:

> While I certainly have no difficulty with words of encouragement and support during the court of chance meetings in public places, it is contrary to long-standing Court policy for any of you to engage in meetings etc. with youth outside your assigned duties.  No Magistrate or Probation officer or … any other person here at the Court has the authority to override this policy.

Doc. 51-3 at 43.  Accordingly, to proceed with her claim, Asbury must raise a genuine issue of fact regarding pretext.

To demonstrate pretext, a plaintiff is required to show either: "(1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate the decision; or (3) that they were insufficient to motivate the employment decision."  *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 184 (6th Cir. 2004) (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)).  As noted, Asbury admits that the conduct she engaged in occurred.  Furthermore, there is no dispute that Asbury was subject to a last chance agreement at the time the last violation of policy occurred.  Accordingly, Asbury has no viable argument that the stated reason for her termination was insufficient.  As such, Asbury is left with arguing that her contact with juveniles that had been released did not actually motivate the decision to terminate her.  In this regard, Asbury has offered no evidence to support a finding that *anything* else motivated her termination.

At best, Asbury attempts to highlight alleged inadequacies in prior discipline decisions. However, Asbury also admits to the conduct that formed the bulk of her prior discipline.  In short, apart from Asbury's pure speculation regarding the "true" reasons for her termination, she has offered no evidence of any other motivating factor.

In summary, Asbury's speech was not a matter of public concern.  A portion of that speech was made pursuant to her official duties as a detention officer.  Overlooking these shortcomings, the *Pickering* balancing test mandates a finding that the speech is unprotected. Assuming the speech is protected, Asbury fails to raise a genuine issue of fact with regard to causation.  Further assuming that Asbury met her prima facie case of retaliation, she has failed to rebut the legitimate reason given for her termination.  For all of these reasons, summary judgment is appropriate on Asbury's first, second, fourth, and fifth causes of action.

## B.  Gender Discrimination

In her complaint, Asbury has raised state and federal claims of gender discrimination. The Sixth Circuit has detailed the elements of a prima facie case of gender discrimination as follows:

> Because she has no direct evidence of discrimination, [Quintile] must show that: (1) she is a member of a protected group; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position; and (4) she was replaced by a person outside the protected class, or similarly situated non-protected employees were treated more favorably. In her attempt to satisfy the fourth element, [Quintile] alleges that similarly situated male employees were treated more favorably than she was.  [Quintile] may make this comparison only if the male employees that she has identified are similarly situated in all respects to her.

*Peltier v. U.S.*, 388 F.3d 984, 987 (6th Cir. 2004) (citations and quotations omitted).  "[T]o be deemed 'similarly-situated,' the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and

have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) (citing *Mazzella v. RCA Global Communications, Inc.*, 642 F.Supp. 1531 (S.D.N.Y. 1986); *Linear v. Safeway Grocery*, 843 F.2d 298 (8th Cir. 1988)).

Asbury's attempts to identify a similarly situated male employee fall significantly short of establishing a genuine issue of material fact.  In her response, Asbury identifies only one alleged comparable, Detention Officer Larry Jennings.  Jennings allegedly attempted to choke a youth on October 23, 2002.  On January 27 and 28, 2003, Jennings allegedly exchanged insults with a juvenile, used crude language, and touched the juvenile's face.  On both occasions, Jennings was suspended.  Based on this conduct, Jennings is not similarly situated.  First, the conduct Jennings engaged in is not remotely similar to the conduct that led to Asbury's discipline and ultimately her termination.  Additionally, Jennings' two incidents of discipline occurred within a three-month period.  In contrast, Asbury was disciplined in May and July of 2002, again in 2003, again in April and August of 2004, again in November of 2006, again in January, May, and November of 2006, and on March 2, 2007.  All of this discipline occurred prior to her ultimate termination.  As such, the type of misconduct at issue is vastly different, the quantity of misconduct is different, the time span of misconduct is different, and for that matter, the supervisors handing down the discipline did not remain consistent over time.  Accordingly, Asbury has failed to demonstrate that she was treated differently than a similarly situated male employee.  As such, summary judgment is appropriate on Asbury's third and ninth causes of action.

**C.  Civil Conspiracy**

In her complaint, Asbury has raised two claims of civil conspiracy.  "[I]n order to establish a claim of civil conspiracy, the following elements must be proven: '(1) a malicious combination; (2) two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy.'" *Aetna Cas. & Sur. Co. v. Leahey Constr. Co.*, 219 F.3d 519, 534 (6th Cir. 2000) (quoting *Universal Coach, Inc. v. N.Y. City Transit Auth., Inc.*, 90 Ohio App.3d 284 (1993)).  In their motion, Defendants have asserted that Asbury fails to identify any specific facts in support of her civil conspiracy claim.  Asbury's response makes it clear that her civil conspiracy claims are dependent upon her remaining claims being successful.  Specifically, Asbury appears to argue that several defendants conspired to deprive her of First Amendment rights and to discriminate against her on the basis of her gender.  Having found that summary judgment is appropriate on the underlying claims, it follows that Asbury cannot satisfy the elements of her civil conspiracy claim.

Additionally, the Court notes that Asbury has provided no evidence of any malicious combination.  Asbury effectively concludes that since several of the defendants worked together on her discipline that they combined maliciously.  She has offered no evidence outside her own speculation that a malicious combination existed.   Accordingly, summary judgment is appropriate on Asbury's sixth and seventh causes of action.

### D.  Sexual Harassment and Hostile Work Environment

Asbury raises federal and state claims of sexual harassment.  A plaintiff may establish a violation of Title VII by demonstrating that discrimination based on sex created a hostile or abusive working environment.  *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67 (1986); *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 560 (6th Cir. 1999).  To establish a sexually hostile environment claim, a plaintiff must provide sufficient evidence to show that (1) she is a

member of a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment unreasonably interfered with her work performance by creating a hostile, offensive, or intimidating work environment; and (5) there is a basis for employer liability. *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999) (setting forth the analogous elements of racial discrimination).

A hostile work environment occurs when the workplace is permeated with discriminatory intimidation, ridicule, and insult that are sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).[1]  The conduct complained of must be both severe and pervasive enough to create an environment that a reasonable person would find hostile or abusive and the plaintiff must subjectively regard that environment as abusive. *Bowman v. Shawnee State University*, 220 F.3d 456, 463 (6th Cir. 2000).  In determining whether the alleged harassment is sufficiently severe or pervasive to constitute a hostile work environment, the court must consider the totality of the circumstances. *Williams*, 187 F.3d at 562.  Appropriate factors for a court to consider include the frequency of the alleged discriminatory conduct; its severity; whether the conduct is physically threatening or humiliating or merely an offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Bowman*, 220 F.3d at 463.  The conduct must be sufficiently extreme to amount to a change in the terms and conditions of employment. *Lovelace v. BP Prod. N. Am., Inc.*, 252 Fed. Appx. 33, 40 (6th Cir. 2007).  "[M]ere utterance of an … epithet which engenders offensive feelings in a employee, does not

---

[1] Ohio courts generally apply federal case law interpreting Title VII of the Civil Rights Act when analyzing violations of R.C. chapter 4112.  *Plumbers & Steamfitters Joint Apprenticeship Committee v. Ohio Civ. Rights Comm'n*, 421 N.E.2d 128, 131 (Ohio 1981).  Accordingly, the Court's analysis will be dispositive of Quintile's state and federal claims.

14

sufficiently affect the conditions of employment to implicate Title VII." *Harris*, 510 U.S. at 21 (1993) (quoting *Meritor Savings Bank*, 477 U.S. at 67).

In the instant matter, Asbury's claim focuses on the alleged actions of Michael Sales, a fellow detention officer, on one day during her employment.  According to Asbury, on that day, Sales suggested that Asbury engage in a "side relationship" with him.  The discussion occurred on only one day, and following the discussion, Asbury avoided Sales for the remainder of the day.  When describing the matter to a co-worker, Asbury stated as follows:

> I was just appalled because me and Mr. Sales never got along, so it was just weird, almost kind of like a weird funny.  So it was like, "Hey, man, you're not going to believe this."

Doc. 51 at 49.

The conduct is properly described as unprofessional.  However, it was isolated.  Moreover, there is no evidence that it affected the conditions of Asbury's employment or interfered with her ability to perform her job.  Given that Asbury described the incident as "kind of like a weird funny," she has no plausible argument that it interfered with her job functions.  This Court reached a similar result in *Quintile v. Medina Cty.*, No. 1:07CV2413, 2008 WL 2484173 (N.D.Ohio June 17, 2008).  Like Asbury, Quintile asserted that a co-worker attempted to form a relationship with her.  In contrast to this matter, Quintile alleged that the co-worker's conduct bordered on an obsession, unlike the one-day encounter described herein.  Despite that evidence, this Court found that Quintile had shown insufficient evidence to demonstrate that the conduct changed the conditions of her employment.  *Id.* at *5.  The Court reaches a similar conclusion herein.

The Court notes that Asbury mentions in passing a prior interaction with Sales.  Asbury claims that Sales threatened her during this prior interaction.  Asbury's recollection of this event

is vague at best.  During the interaction, Sales requested that Asbury bring him certain supplies and was apparently angry over the period of time it took for the supplies to be delivered.  Sales apparently stated something similar to the fact that Asbury "better watch who she talks to like that."  Asbury found this intimidating not because of the content of the speech, stating that it was "more about the way he said it than what he said."  Doc. 51 at 52.  The entire incident is ambiguous.  Viewing the evidence in a light most favorable to Asbury, this Court cannot conclude that it in any manner altered her working conditions.  This type of event never occurred again, and Asbury continued working with Sales, up until the incident described above, without any further issues.  Accordingly, summary judgment is appropriate on Asbury's eighth and ninth causes of action.

### E.  Retaliation – Sexual Harassment

Asbury alleges that her termination was also the result of retaliation related to her report that Sales had sexually harassed her.  The Court finds no merit in this claim.

The elements of a retaliation claim are set forth above.  Similar to the above analysis, Asbury has failed to demonstrate causation.  In support, Asbury claims that she reported the harassment to Wilkes on the morning of April 23, 2007 and that she was fired later that afternoon when meeting with Alexander.  Asbury contends that Wilkes gave inconsistent statements with respect to when he told Alexander of the complaint of harassment.  Asbury, therefore, concludes that summary judgment is inappropriate.  The Court disagrees.

First, it is undisputed that Judge Teodosio made the decision to terminate Asbury in early April of 2007, sending a draft of the termination letter to counsel dated April 6, 2007.  There is no question that Judge Teodosio was not informed of the report of the harassment at any time prior to the termination letter being delivered to Asbury.  In addition, Alexander testified during

his deposition that he knew nothing about Asbury's harassment complaint until he walked her to her car following her termination.  Doc. 63 at 7.  While Wilkes was apparently confused as to when he delivered a report regarding the harassment, Alexander was clear that he did not know of the harassment prior to informing Asbury of her termination.  More importantly, there is no dispute that the decision to terminate Asbury came from Judge Teodosio, and that decision was made well before Alexander or Wilkes had any knowledge of Asbury's harassment complaint. Accordingly, Asbury cannot establish the causation element of her remaining retaliation claims. Summary judgment, therefore, is appropriate on Asbury's tenth and eleventh causes of action.

### F.  Public Policy

Asbury's brief in opposition makes it clear that her public policy claim is dependent upon her prior claims being successful.  Having found no violations of her constitutional or statutory rights, it follows that Asbury's derivative public policy claim cannot remain.   Summary judgment is granted on count twelve of the complaint.

### G.  Negligent Infliction of Emotional Distress ("NIED")

Defendants correctly assert that Ohio law does not recognize an NIED claim in the employment termination setting.  *See Powers v. Pinkerton, Inc.*, 2001 WL 60035 (Ohio Ct. App. Jan. 18, 2001) (citing *Tschantz v. Ferguson*, 97 Ohio App .3d 693, 724 (1994); *Strawser v. Wright*, 80 Ohio App.3d 751, 754 (1992); *Hatlestad v. Consol. Rail Corp.*, 75 Ohio App.3d 184, 191 (1991); *Hanly v. Riverside Methodist Hosp.*, 78 Ohio App .3d 73, 83 (1991); *Antalis v. Ohio Dept. of Commerce*, 68 Ohio App .3d 650, 653 (1990)).   In an effort to avoid summary judgment, Asbury claims that her NIED claim arises out of the violation of her First Amendment rights.  Having found no violation of those rights, it follows that the derivative NIED claim must fail as well.  Summary judgment, therefore, is appropriate on Asbury's thirteenth cause of action.

**IV. Conclusion**

Based upon the reasons stated herein, Defendants' motion for summary judgment is GRANTED.  Asbury's complaint is DISMISSED.

IT IS SO ORDERED.


DATED: October 21, 2009          __/s/ John R. Adams_____
                                 JUDGE JOHN R. ADAMS

18